## LACEY v. OTTAWA BANKING & TRUST CO.

## In re JEFFERSON LAND CO. OF MAINE.

(Circuit Court of Appeals, Fifth Circuit.    April 30, 1921.)

### No. 3639.

Drains ⊜⇒14(1)—Ostensible transfers of land by corporation held insufficient to make organization of a district valid.

Where a corporation owning all of the land in a proposed district sold three small tracts to laborers, by deeds recorded and then placed in escrow, for delivery after payment of the purchase price, and sold another tract to its manager, who conveyed back to the company, and these four grantees and one other, whose exact relation to the company was not shown, constituted the five drainage commissioners, the district was invalid, under Act La. No. 317, of 1910, prohibiting the creation of a district which contains less than five landowners.

Appeal from the District Court of the United States for the Eastern District of Louisiana; Rufus E. Foster, Judge.

Suit by the Ottawa Banking & Trust Company, as trustee in bankruptcy of the Jefferson Land Company of Maine, against the Assessor and Collector of Taxes of Jefferson Parish, La., and others. Decree for plaintiff, and defendant James D. Lacey appeals. Affirmed.

Wm. Winans Wall, of New Orleans, La., for appellant.

Sanders, Brian & Sanders, of New Orleans, La., for appellee.

Before WALKER, BRYAN and KING, Circuit Judges.

BRYAN, Circuit Judge. The Ottawa Banking & Trust Company, as trustee in bankruptcy of the Jefferson Land Company of Maine, filed its bill in equity against the assessor and the collector of taxes of Jefferson parish, La., the board of commissioners of the Fifth drainage district of said parish, the Jefferson Trust & Savings Bank, and James D. Lacey. The bill alleged that the commissioners of the drainage district had issued bonds of the par value of $10,800, which were in the possession of either the bank or Lacey; that the bonds were void, for the reason that the laws of Louisiana authorizing the creation of a drainage district had not been complied with, but that the assessor and the collector were attempting to collect taxes for the payment of interest on the bonds. It was further alleged that the bonds were acquired and held with knowledge or notice of their invalidity. The bill prayed for an injunction against the collection of drainage taxes, against the sale and disposal of the bonds, and for their cancellation.

Act No. 317 of the Louisiana Legislature of 1910 provides for drainage districts, but prohibits the creation of a district which contains less than five landowners. The act also provides for five drainage commissioners, each of whom is required to be a citizen of the state and to own land within the drainage district.

During the year 1914 the bankrupt was involved in financial difficulties. It was the sole owner of a tract of land, and in order to raise

⊜⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

money undertook to have its land incorporated into a drainage district. Theretofore the bankrupt had executed deeds conveying to two laborers on its plantation about three acres each, and a deed to a third party of about the same acreage. None of these three deeds had been delivered, but each had been placed in escrow in the Jefferson Trust & Savings Bank until the purchase price should be fully paid. Notwithstanding the purchase price in large part remained unpaid by each of these three grantees, the deeds to them were recorded, but immediately redeposited in the bank in escrow. Just prior to the organization of the drainage district, two deeds were executed by the bankrupt company, one to its manager, who conveyed back to the company, and who became president of the board of commissioners of the drainage district. The other deed conveyed to one Laferriere the usual three acres. Whether he conveyed back to the company does not appear. In this manner five so-called commissioners were provided for, and the drainage district organized. These commissioners immediately issued to the bankrupt two certificates of indebtedness for $4,727 and $5,288.85, respectively, in pretended payment for canals and levees already on the land. The bankrupt then executed to the Jefferson Trust & Savings Bank three notes, aggregating $6,531.70, which represented a loan, and deposited the certificates of indebtedness as collateral security. A bond issue of approximately $140,000 was authorized by the drainage district, but before any bonds were issued bankruptcy proceedings of the land company intervened, and the Jefferson Trust & Savings Bank filed its claim as an unsecured creditor in the amount of the notes.

In January of 1916 the Jefferson Bank sold the certificates of indebtedness at public auction. The sheriff, who was also president of the bank, conducted the sale, but as auctioneer, and not in his official capacity. The certificates were bought by C. G. Rives, Jr., auditor of the Interstate Bank & Trust Company of New Orleans, for the sum of $175. The relations between these banks were intimate. The New Orleans Bank was a large stockholder of the Jefferson Bank, and was its depository. Lynn Dinkins, the president of the New Orleans Bank, was the son of James Dinkins, vice president and cashier of the Jefferson Bank. James Dinkins was also secretary and treasurer of the board of commissioners of the drainage district. The bonds of the drainage district had been printed and were in the New Orleans Bank for safe-keeping. Rives, having purchased the certificates of indebtedness, appeared before the drainage commissioners and procured the issuance by them to him of drainage bonds in lieu of certificates. Due formalities of purchase of bonds, surrender of certificates, and exchange of checks were observed, but all that actually happened was an exchange of certificates for bonds. Rives then sold to the New Orleans Bank the bonds for the sum which he had paid for the certificates. Thereafter the New Orleans Bank sold to one of its directors, James D. Lacey, the bonds for $182.24, which was the amount the bank had paid, with interest. The same attorney represented, in the order named, the Jefferson Bank, Rives, the New Or-

leans Bank, and Lacey in the issuance and various transfers of the bonds.

The court below held that the law authorizing the creation of a drainage district had not been complied with, and that Lacey and both the banks had knowledge or notice of the entire proceedings, and of the invalidity of the bonds, and entered a final decree enjoining the collection of taxes to meet interest payments on the bonds, declaring that the bonds held by Lacey were null and void, and ordering them cancelled. None of the defendants has appealed, except Lacey.

There was no dispute as to the manner of the organization of the district drainage board. The five individuals to whom small and insignificant tracts of land were conveyed never became the real owners. It will not be necessary to go so far as to find that all of these individuals had no interest in the land. Certainly the president of the board did not, because he conveyed back to the bankrupt the land which it had conveyed to him. And it is beyond question that the deeds to the two laborers of the bankrupt company were only recorded for the purpose of making them appear as owners, in order to create a drainage district. There did not exist, therefore, five owners of the lands attempted to be incorporated into a drainage district, and under the plain provisions of the statute there could not be a drainage district, or a board of drainage commissioners. Consequently there could not be issued valid certificates of indebtedness.

It is the contention of appellant that he had no knowledge or notice of any of the transactions by which the certificates were converted into bonds, and that he was acting in his individual capacity, and not on behalf of either bank, in the purchase of the bonds, which he claims to have bought as an investment for himself.

On the other hand, the trustee contends that there was never any real sale of the certificates, but that the transactions by which the certificates of indebtedness were transferred from the Jefferson Bank to Rives, and the bonds from Rives to the bank by which he was employed, and from that bank to the appellant, were entered into in pursuance of a preconceived plan, and in an effort to put appellant in the attitude of being a bona fide purchaser of negotiable bonds without notice of any infirmity.

The conclusions of the District Judge, who heard the testimony, that appellant was either familiar with, or deliberately remained in ignorance of, the facts that no drainage district had been created, and that there were no drainage commissioners, are well sustained by the evidence.

The decree is affirmed.